**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| STANLEY JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19-cv-07119 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| NESTLÉ USA, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Stanley Johnson, an African-American man, worked as a boiler room helper at a production facility owned by Defendant Nestlé USA, Inc. ("Nestlé") from October 2016 until he was demoted to a lesser position in January 2017. Johnson claims he was terminated from the boiler room helper position because of his race, and thus he sued Nestlé under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., and 42 U.S.C. § 1981. Almost a year and a half after filing his original complaint against Nestlé, Johnson amended his complaint to assert claims against Defendants Fervalue USA, Inc. and Ferrero U.S.A., Inc. (together, "Ferrero Defendants"), which purchased the production facility where Johnson worked in 2018. Ferrero Defendants have filed a motion to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 102.) For the reasons that follow, their motion is granted in part and denied in part.

**BACKGROUND**

For purposes of the motion to dismiss, the Court accepts the well-pleaded factual allegations in the First Amended Complaint ("FAC") as true and draws all reasonable inferences

from those facts in Johnson's favor as the non-moving party. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The FAC alleges as follows.

Johnson is an African-American man from Chicago, Illinois. (*See* FAC ¶ 3, Dkt. No. 97.) On October 17, 2016, he began working for Nestlé as a boiler room helper in one of the company's production facilities. (*Id.* ¶ 7.) On January 17, 2017, just a few months into Johnson's employment, Nestlé terminated his position. (*Id.* ¶ 10.) Johnson alleges that he was terminated by "his Caucasian supervisor," who had no legitimate business reason to do so. (*Id.* ¶ 10.) Moreover, a Caucasian boiler room helper who had been hired around the same time as Johnson was not terminated but instead assumed Johnson's job duties and responsibilities. (*Id.* ¶ 11.) And so Johnson claims that he was terminated from the position of boiler room helper because of his race. (*Id.* ¶ 12.)

Although he continued to work for Nestlé, on June 23, 2017, Johnson filed a Charge of Discrimination ("Charge") with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC"). (FAC ¶ 5; FAC, EEOC Charge, Ex. A, Dkt. No. 97.) In the Charge, Johnson alleges that, "[f]rom on or about October 17, 2016 to on or about January 17, 2017, [he] was subjected to unequal terms and conditions of employment by Nestlé USA, Inc." (EEOC Charge.) Johnson further states in the Charge that, among other things, he was not given proper training, he was subjected to a new evaluation process put in place to target him so that would not be promoted to a journeyman position, and he was ultimately demoted out of the boiler room even though he was meeting all his employer's expectations. (*Id.*) According to Johnson, he was treated differently than a similarly situated non-African-American boiler room helper who had levels of experience and work performance similar to his but was not demoted to a lesser position. (FAC ¶¶ 8–11; EEOC Charge.)

Then, in or around January 2018, Ferrero Defendants purchased from Nestlé the production facility where Johnson worked, at which point Johnson became an employee of Ferrero Defendants. (*Id.* ¶¶ 18–19.) Ferrero Defendants knew about Johnson's discrimination claim against Nestlé before they purchased the production facility. (*Id.* ¶ 29.) After the purchase, Ferrero Defendants continued to run the facility in the same manner as it had been run by Nestlé. (*Id.* ¶ 30.) Johnson continued to perform his job satisfactorily yet, based on his race, Ferrero refused to return him to the position of boiler room helper. (*Id.* ¶¶ 21–22.)

On October 29, 2019, Johnson filed his initial complaint in this matter asserting race discrimination claims against Nestlé under Title VII and § 1981. Johnson received his Notice of Right to Sue from the EEOC on July 15, 2020, and he subsequently filed the FAC on March 10, 2021. In addition to the previously asserted claims against Nestlé, the FAC includes race discrimination claims under Title VII and § 1981 (Count II) and a successor liability claim (Count III) against Ferrero Defendants.

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *See Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

In addition to challenging whether Johnson's factual allegations state a claim, Ferrero Defendants contend that the claims against them must be dismissed because Johnson failed to exhaust his administrative remedies prior to bringing suit and the claims are time-barred. These are affirmative defenses and, normally, a plaintiff's complaint need not anticipate an affirmative defense to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). "The exception occurs where . . . the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely . . . ." *Id.*

I.      **Count II—Race Discrimination Claim Against Ferrero Defendants**

In Count II, Johnson claims that Ferrero Defendants violated Title VII and § 1981 by refusing to return him to the boiler room position because of his race after they assumed his employment from Nestlé. Ferrero Defendants, however, argue that Count II must be dismissed because Johnson failed to exhaust his administrative remedies before adding a Title VII claim that did not appear in his EEOC Charge, because his § 1981 claim is time-barred, and because he fails to plead the elements of either claim adequately.

A.      **Exhaustion of Administrative Remedies for Title VII Claim**

Title VII and § 1981 provide two separate and distinct vehicles for an employee to challenge an employer's alleged intentional discrimination. *See Walker v. Abbott Laboratories*, 340 F.3d 471, 474 (7th Cir. 2003) (discussing differences between Title VII and § 1981). One difference between the two statutes is the necessity to exhaust administrative remedies. "Title VII does not authorize the filing of suit until the plaintiff has exhausted his administrative remedies," which includes timely filing a charge with the EEOC as well as an initial complaint. *Hill v. Potter*, 352 F.3d 1142, 1145 (7th Cir. 2003); *see also* 42 U.S.C. § 2000e-16(c). This exhaustion

requirement does not, however, apply to claims brought under § 1981. *See Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 539 (7th Cir. 2007).

Specifically, a person who believes he has been discriminated against in violation of Title VII must file a charge with the EEOC within 300 days of the alleged unlawful employment practice to preserve his right to file a private lawsuit. *See* 42 U.S.C. § 2000e-5(e)(1); *see also Boston v. U.S. Steel Corp.*, 816 F.3d 455, 463 (7th Cir. 2016); *Walker*, 340 F.3d at 474. If the EEOC chooses not to file a civil action based on the charge, it will issue the aggrieved individual a notice of right to sue. That person then has 90 days from the time of the notice of right to sue to file a private civil action. *Id.* § 2000(f)(1).

As a general rule, a plaintiff may not bring claims in a Title VII lawsuit that were not included in his EEOC charge. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). The purpose of the rule is to afford the EEOC and the employer an opportunity to settle the dispute, and to give the employer some warning of the conduct about which the employee complains. *Id.* A Title VII plaintiff need not allege in the EEOC charge each and every fact that forms the basis of each claim in his complaint. *Id.* Instead, a plaintiff may bring Title VII claims if there is a reasonable relationship between the allegations in the EEOC charge and the claims in the complaint, and the claims in the complaint must reasonably have been expected to grow out of an EEOC investigation of the allegations in the EEOC charge. *Id.* For the first part of the test, claims are not reasonably related unless there is a factual relationship between them—that is, the EEOC charge and the complaint must, at a minimum, describe the same conduct and implicate the same individuals. *Harper v. Godfrey Co.*, 45 F.3d 143, 148 (7th Cir. 1995). The second part of the test is more difficult, as it requires courts to speculate about what the EEOC might or might not discover during the course of an investigation. *See Cheek*, 31 F.3d at 500.

In his FAC, Johnson alleges two distinct instances of discrimination: one involving Nestlé terminating his employment as a boiler room helper (Count I) and the other involving Ferrero Defendants refusing to return him to the position of boiler room helper (Count II). While both involve Johnson's former role of boiler room helper at the same production facility, the alleged events took place a year apart and involved different employers—Nestlé removed Johnson from the boiler room helper position on January 17, 2017, while Ferrero Defendants failed to reinstate him after they purchased the production facility in January 2018. Removing an employee from a position and refusing to return an employee to a position are different employment actions, particularly when a full year passes between them. The facts underlying one event do not necessarily overlap with the facts of the other. Neither the factual allegations in the Charge nor those in the FAC suggest that they do here.

The allegations in the Charge, like those comprising Count I, focus on how Johnson was treated by Nestlé between his hiring on October 17, 2016 and his demotion on January 17, 2017. There are no allegations in the Charge regarding the time period after January 17, 2017, let alone for the time period beginning in January 2018 when Ferrero Defendants purchased the production facility. Similarly, Count I specifically alleges that, "[d]uring [Johnson's] employment ***with Nestlé***, [Johnson] was treated differently than Caucasian employees in that he did not receive the same training as a Caucasian boiler room helper hired around the same time as [Johnson]." (FAC ¶ 8 (emphasis added).) That Count also alleges that Johnson was terminated from the boiler room helper position while a similarly situated Caucasian boiler room helper was treated better than him. Though Johnson restates and realleges those same allegations in Count II, the allegations in the Charge and Count I do not add any insight into the circumstances that led Ferrero Defendants not to reinstate Johnson in the boiler room position after they took over the facility.

Thus, while it is clear that the Title VII claim in Count I is like or related to the allegations in Johnson's Charge, the same cannot be said for the Title VII claim in Count II. *See Cheek*, 31 F.3d at 501 ("Because an employer may discriminate on the basis of sex in numerous ways, a claim of sex discrimination in an EEOC charge and claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of sex discrimination. The claims are not alike or reasonably related unless there is a factual relationship between them."); *Rush*, 966 F.2d at 1110 ("An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination."). Because Count II does not have a reasonable relationship to the allegations in his Charge, Johnson has failed to exhaust administrative remedies for his Title VII claim against Ferrero Defendants.

### B.      § 1981 Claim

That still leaves the § 1981 claim against Ferrero Defendants, which is not subject to the exhaustion requirement. Ferrero Defendants' statute of limitations argument against the § 1981 claim may be disposed of quickly. Johnson was required to file his § 1981 claim within four years of the alleged discriminatory act. *See Riley v. Elkhart Community Schools*, 829 F.3d 886, 891 (7th Cir. 2016) (recognizing four-year statute of limitations for § 1981 claims). Ferrero Defendants acquired the production facility where Johnson worked in January 2018. Accordingly, assuming that the alleged discriminatory act took place, at the earliest, on the date Ferrero Defendants took over the facility and failed to return Johnson to the boiler room, the § 1981 claim against Ferrero Defendants in the FAC was filed within four years of the discriminatory act (*i.e.*, prior to January 2022) and is not barred by the statute of limitations. Because the claim was timely filed, there is

no need to consider whether the FAC relates back to the original complaint under Federal Rule of Civil Procedure 15(c).

While timely filed, however, the § 1981 claim in Count II still does not survive because Johnson has not alleged facts sufficient to state a claim. Section 1981 guarantees to all citizens regardless of race "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. To state a claim for race discrimination under § 1981, a plaintiff must allege that (1) he is a member of a racial minority, (2) the defendant intended to discriminate against him on the basis of his race, and (3) the alleged discrimination relates to the making and forming of a contract. *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). Johnson adequately alleges the first and third elements by pleading that he is an African-American man and that he was employed by—and thus "in contract" with—Ferrero Defendants. (FAC ¶¶ 3, 19.) Nonetheless, Johnson's § 1981 claim fails at the second element: he has not plausibly alleged that Ferrero Defendants intended to discriminate against him on the basis of his race.

To satisfy the second element, Johnson relies on the conclusory statements that Ferrero Defendants "refused to return [him] to the position of boiler room helper based on [his] race" and "willfully and intentionally discriminated against [him] in the terms, conditions, and discharge of his employment because of his race." (*Id.* ¶¶ 22–23.) But without more, the Court cannot draw a reasonable inference that Ferrero Defendants' failure to place Johnson back in his former position stemmed from racially discriminatory intent. Unlike with his race discrimination claim against Nestlé, Johnson does not allege that Ferrero Defendants gave the boiler room position that Johnson desired to a similarly situated white employee (or any other employee) or otherwise treated Johnson differently than any other employee. Furthermore, nothing in the FAC as a whole suggests that Johnson's old position as a boiler room helper was even available in January 2018

(recall that Johnson alleges elsewhere in the FAC that Nestlé gave his old job duties and responsibilities to a Caucasian employee a year earlier). Johnson's § 1981 claim against Ferrero Defendants is thus "skeletal" with "nothing more than an assertion" that cannot sustain his claim. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Though the Court liberally construes complaints brought under federal civil rights statutes, "vague and conclusory allegations of race discrimination may not form the basis of a complaint." *Yaodi Hu v. City of Chi.*, No. 08C839, 2008 WL 5094157, at *2 (N.D. Ill. Nov. 26, 2008) (internal quotation marks omitted). As a result, Johnson fails to state a claim for racial discrimination under § 1981.[1]

Ferrero Defendants' motion to dismiss Count II is therefore granted.

## II. Count III—Successor Liability Claim Against Ferrero Defendants

Count III of Johnson's FAC asserts a claim for successor liability against Ferrero Defendants, seeking to hold them responsible for Nestlé's alleged race discrimination as set forth in Count I.

Successor liability is "an equitable doctrine that 'provides an exception from the general rule that a purchaser of assets does not acquire a seller's liabilities.'" *Grasty v. Cambridge Integrated Servs. Group, Inc.*, Nos. 12 C 9141 & 13 C 2522, 2014 WL 5543933, at *5 (N.D. Ill. November 3, 2014) (quoting *Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995)). The Seventh Circuit has long held that the successor liability doctrine applies to Title VII and § 1981 cases. *See Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1236 (7th Cir. 1986); *Ordonez v. Akorat Metal Fabricators,*

---

[1] The Court notes that the same pleading deficiency would have doomed Johnson's Title VII claim against Ferrero Defendants if he had not failed to exhaust his administrative remedies. That is because Title VII and § 1981 have the same liability standards, *Morris v. BNSF Railway Co.*, 969 F.3d 753, 758 (7th Cir. 2020), and with respect to Ferrero Defendants' actions, Johnson only pleads conclusory statements that track the elements of a Title VII claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

*Inc.*, No. 10 C 5708, 2011 WL 6379290, at *2 (N.D. Ill. Dec. 20, 2011) ("The Seventh Circuit has

applied this federal successorship doctrine to . . . employment-discrimination claims under 42

U.S.C. § 1981, Title VII, the [Age Discrimination in Employment Act], and the Pregnancy

Discrimination Act."). In the employment discrimination context, successor liability protects

workers who experience discrimination, particularly in circumstances where obtaining a remedy

may be difficult:

> [T]he victim of the illegal employment practice is helpless to protect his rights
> against an employer's change in the business. A predecessor's illegal act may have
> left the employee without a job, promotion, or other employment benefits that he
> cannot now obtain from another employer, but that he might have received from
> the successor had the predecessor not violated the employee's rights.

*Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 746 (7th Cir. 1985). Accordingly, application of

successor liability in the Title VII context assists the statute in achieving its purposes. *Wheeler*,

794 F.2d at 1237 ("Vindication of the Congressional purpose to diminish substantially, if not to

eliminate, discrimination in employment justified not only the importation of the common law

concept of successor liability, but liberalization of that concept in favor of victims of

discrimination in employment.").

As an equitable doctrine, successor liability is "not an inflexible command, and 'in light of

the difficulty of the successorship question, the myriad factual circumstances and legal contexts in

which it can arise, and the absence of congressional guidance as to its resolution, emphasis on the

facts of each case as it arises is especially appropriate.'" *Chi. Truck Drivers*, 59 F.3d at 49

(quoting *Howard Johnson Co. v. Detroit Loc. Joint Exec. Bd., Hotel & Rest. Emp. & Bartenders

Int'l Union, AFL-CIO*, 417 U.S. 249, 256 (1974)). So courts must consider the facts of each case,

as "[t]here is, and can be, no single definition of 'successor' which is applicable to every legal

context." *Chi. Dist. Council of Carpenters Pension Fund v. A.F. McCarthy, Inc.*, No. 94 C 6881, 1996 WL 563459, at *3 (N.D. Ill. Sept. 30, 1996) (quoting *Howard Johnson*, 417 U.S. at 262).

### A. Three-Factor Test

"Whether liability should be imposed on an asset purchaser depends on three factors: '(1) whether the successor employer had prior notice of the claim against the predecessor; (2) whether the predecessor is able, or was able prior to the purchase, to provide the relief requested; and (3) whether there has been a sufficient continuity in the business operations of the predecessor and successor.'" *Id.* (quoting *Wheeler*, 794 F.2d at 1236); *see also Teed v. Thomas & Betts Power Solutions, LLC*, 711 F.3d 763, 765–66 (7th Cir. 2013). The Court finds that each of these elements has been adequately pleaded here.

Johnson alleges that, "[p]rior to [the production facility's] purchase, Fervalue and/or Ferrero had knowledge of Plaintiff's discrimination claim against Nestlé," and further lays out the timeline of Ferrero Defendants' purchase, noting that they had months prior to the purchase to conduct due diligence and years between the purchase and Johnson's filing of his original complaint to learn of his EEOC Charge. (FAC ¶¶ 5–6, 28–29.) Further, it is plausible from the FAC's allegations that Ferrero Defendants' presence in this case is necessary to ensure complete relief to Johnson—among other things, he will likely seek reinstatement to his former position. (*Id.* ¶ 31.) There also appears to have been continuity in business operations based on Johnson's allegation that, after the purchase, Ferrero Defendants "continued to run the Production Facility in a manner that was substantially the same as when it was owned by Nestlé." (*Id.* ¶ 30.) For these reasons, Johnson has adequately plead the elements of a successor liability claim.

### B. Failure to Exhaust Administrative Remedies and Statute of Limitations

Ferrero Defendants also contend that Johnson failed to exhaust administrative remedies as to Count III and that his successor liability claim is time-barred since it was not brought within 90 days of his Notice of Right to Sue. As noted above, the administrative exhaustion requirement and related 90-day limitations period do not apply to § 1981 claims, and there is no apparent reason why they would nonetheless apply to a successor liability claim based on an underlying § 1981 claim. For this reason, the Court considers Ferrero Defendants' affirmative defenses only with respect to successor liability for the Title VII claim against Nestlé.

With respect to the Title VII claim, Ferrero Defendants offer no persuasive authority for the proposition that the exhaustion requirement and 90-day limitations period apply to successor liability as well as the underlying claim. Ferrero Defendants cite three cases to support their position. With respect to two of those cases, Ferrero Defendants misstate the holding. First, Ferrero Defendants cite *Dybala v. Landau & Heyman, Inc.* for the proposition that courts dismiss as time-barred successor liability claims not brought within the 90-day limitations period. No. 94 C 7719, 1997 WL 162846 (N.D. Ill. Mar. 27, 1997). But the *Dybala* court found that it could not impose successor liability on the later-named defendant based on the elements for a successor liability claim. *Id.* at *5. Specifically, the court stated that, because the later-named party "could not have had actual notice of [plaintiff's] EEOC charge or claim before or during the asset purchase from [the predecessor], and [the predecessor's] inability to provide the relief requested by [plaintiff] [was] not . . . demonstrated," successor liability could not apply. *Id.* Only ***after*** determining that the successor liability claim failed on its merits did the *Dybala* court consider the defendant's separate statute of limitations argument, and nowhere did the Court indicate that a successor liability claim must be filed against the alleged successor within the 90-day bar of Title

VII. *Id.*; *see also Paulsen v. Abbott Lab'ys*, 368 F. Supp. 3d 1152, 1167 n.10 (N.D. Ill. 2019)

("[T]he Court in *Dybala v. Landau & Heyman, Inc.* explicitly found that that there was no

successor liability, and thus analyzed the claim against the relevant defendant as if they had been

added to the complaint for the first time."). In short, *Dybala* provides Ferrero Defendants no help

here.

Ferrero Defendants' reliance on the out-of-circuit case *Romains v. Grand Casinos of

Mississippi, LLC-Gulfport* is similarly misplaced. No. 1:07CV510LGJMR, 2009 WL 2497116

(S.D. Miss. Aug. 14, 2009). There, the plaintiff filed an EEOC charge against her employer,

Grand Casinos of Mississippi, LLC-Gulfport ("Grand Casinos"), but instead named Harrah's

Entertainment as the defendant in her complaint. *Romains*, 2009 WL 2497116, at *1. That choice

was not made by mistake but rather because the plaintiff viewed Harrah's Entertainment as having

a "going concern." *Id.* at *2. Regardless, the plaintiff ultimately amended her complaint to

substitute Grand Casinos for Harrah's Entertainment, but did so after the 90-day period allowed

for Title VII claims. *Id.* at *1. Because Grand Casinos was always the plaintiff's employer, no

successor liability claim was ever asserted in that case. *Id.* at *4. Instead, the plaintiff raised

successor liability as a potential equitable remedy to keep her claim against Grand Casinos from

being time-barred. *Id.* But the strategy failed. *Id.* The *Romains* court found the Title VII claim

asserted directly against Grand Casinos to be time-barred and separately concluded that the

doctrine of successor liability did not apply. *Id.* at *2–4. In particular, the argument for successor

liability failed because the plaintiff (1) did not plead any of the elements for successor liability,

and (2) only asserted a direct Title VII claim as to Grand Casinos; not because successor liability

claims pursuant to Title VII have their own 90-day limitations period. *Id.* at *4.

While the third case, *EEOC v. Labor Solutions of AL LLC*, comes closer to supporting Ferrero Defendants' argument, it contains no detailed analysis as to why exhaustion and statute of limitations principles should be applied to successor liability claims. 242 F. Supp. 3d 1267, 1283–84 (N.D. Ala. 2017). Rather, *Labor Solutions* appears simply to assume that these statutory requirements extend to the doctrine of successor liability. *Id.* Consequently, the Court finds this district court decision out of the Northern District of Alabama unpersuasive.

Given the "liberalization" of the successor liability doctrine, its equitable nature, and the emphasis on the need to consider the particular facts of a case, this Court declines to find that the statutory requirement of exhaustion for Title VII claims, and its associated limitations period, apply to parties held liable based on successor liability. Imposing those requirements on top of the required elements for successor liability would not account for the practicalities of Title VII claims, including the fact that a plaintiff may not know the name of the successor at the time of the EEOC charge or initial complaint, and that delays in EEOC investigations and litigation may prevent plaintiffs' timely filing. Such requirements are incompatible with the principles of the equitable doctrine which, in the context of Title VII, seeks to "diminish substantially, if not eliminate, discrimination in employment." *Wheeler*, 794 F.2d at 1237. Otherwise, successor liability in the context of Title VII would be rendered largely ineffective—after all, plaintiffs presumably cannot name a successor employer in their charge before successorship has even taken place. *See EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). As stated in *MacMillan*,

> [I]t is reasonable to assume, at least in the case of successor companies, that Congress only intended that a discriminatee be required to name those who were known to him and could have been charged within the period of limitations. This interpretation is logical and wholly consistent with the purposes of Title VII. The statutory mandate of informal settlement and conciliation is not served by requiring an aggrieved person to charge each new successor company.

*Id.* For Johnson, in particular, finding that those statutory requirements (and the affirmative defenses they offer) apply despite his adequate pleading of a successor liability claim would frustrate his ability to pursue relief in the form of reinstatement, without which he might not be made whole.

Thus, the Court rejects Ferrero Defendants' claim that the exhaustion and statute of limitations requirements for Title VII claims apply to preclude Johnson's claim for successor liability. Because Johnson has adequately pleaded the elements of successor liability for his §1981 and Title VII claims, Ferrero Defendants' motion to dismiss is denied as to Count III.

## CONCLUSION

For the foregoing reasons, Ferrero's motion to dismiss (Dkt. No. 102) is granted in part and denied in part. The motion is granted as to Count II and denied as to Count III.

ENTERED:

Dated: September 29, 2023

_____
Andrea R. Wood
United States District Judge